SCHWAB et al. v. APSTEIN.

(Circuit Court of Appeals, Second Circuit. March 7, 1910.)

No. 107.

PATENTS (§ 328\*) — VALIDITY AND INFRINGEMENT — PUNCTURE CLOSERS FOR PNEUMATIC TIRES.

The Glidden patent, No. 602,743, and the Sampson patent, No. 632,540, each for a device for closing punctures in pneumatic tires or tubes, consisting of a metal shank with a flat head pivotally attached to one end, which may be turned up alongside the shank to be forced through the puncture and a cap to be screwed down on the outer surface, the latter patent being for improvements on the device of the former, were not anticipated nor invalidated by prior use and disclose invention; also *held* infringed by the device of the Apstein patent, No. 818,402.

Appeal from the Circuit Court of the United States for the District of Connecticut.

Suit in equity by Louis Schwab and others against David Apstein. Decree for complainants (172 Fed. 149), and defendant appeals. Affirmed.

This cause comes here on appeal from a decree of the Circuit Court, District of Connecticut, restraining the infringement of two letters patent, to wit, No. 602,743, issued April 19, 1898, to G. F. Glidden for "device for closing punctures in pneumatic tires," and No. 632,540, issued September 5, 1899, to R. W. Sampson for "puncture closer for pneumatic tires." The opinion of the court below is found in 172 Fed. 149.

David Apstein, pro se.

Andrew Wilson (Archibald Cox, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The Glidden specification states that the invention relates to devices for effectually closing punctures and holes in pneumatic tires, hose, or tubing, being particularly adapted for closing holes and punctures in pneumatic vehicle tires by a "simple, strong and efficient puncture-closing device adapted to be readily and accurately applied." It proceeds:

"Rubber and other flexible plugs have been devised for closing punctures with the aid of cement, but such plugs are difficult to apply, and owing to their flexibility they frequently are so bent or folded as to render it practically impossible to at times effect a perfect closure. So, too, conical headed plugs have been devised provided with a threaded shank to receive a cap, the material of the tire or tubing being held between the base of the cone and the cap, but such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

devices tend to greatly enlarge the puncture and the yielding material of the tubing will not fit tightly around the base of the plug, so that a tight closure cannot be effected."

Fig. 1.

The device of the patent will be readily understood by reference to Figure 1, which represents it applied to the tire.

"The device comprises, essentially a head, a, preferably made of brass or other rigid material, a threaded shank, b, to which the head is pivotally connected, and a detachable cap, c, adapted to be applied to the shank and to rest against the interior of the tire or other tube. (Manifestly the word 'interior' is a clerical error; the cap rests against the exterior.)

"I have shown the head, a, as exteriorly convexed and interiorly concaved to leave a peripheral rim or bead, which also serves to retain in place a transverse and preferably spring plate, a2, arched at its centre to receive the yoke-like end, b1, of the hollow shank, b, the latter being both interiorly and exteriorly screw-threaded. The head and shank are thus pivotally connected." (In consequence when about to be inserted the head is turned so as to lie alongside the shank. After insertion it resumes the transverse position shown in Fig. 1.)

"The spring-plate, a2, tends to retain the head either at right angles to the shank or swung up against it. The cap, c, is shown as convexed upon its outer surface and having on its inner face a projecting interiorly-threaded hub, c1, the opening thereof extending through the cap, the latter having oppositely located peripheral notches, c3, and preferably the hub, c1, is made slightly conical.

"In order to apply the closing device to a punctured tire or other tube, T, a threaded rod, D, is screwed into the shank, b, and the head, a, having been turned up against the shank it is forced edgewise through the hole or puncture into the interior of the tube. When the head, a, is entirely within it, it can be readily turned on its pivot into position at right angles to the shank and by means of the rod, D, drawn up close against the inner surface of the tube as in Fig. 1 with the shank in the hole or puncture. The cap, c, is then slid down to the outer end of the shank, and the threaded hub, c1, is firmly screwed into the shank, the hub forcing itself into the puncture, as shown in Fig. 1 and adjusting itself to the thickness of the tube, T. A suitable wrench having prongs to enter the notches, c3, is employed to screw the cap into position, the yielding material of the tube, T, around the hole therein being tightly compressed between the head, a, and the cap, the material being forced into the concave back of the head, as shown in Fig. 1 to effectually and hermitically close the hole. The notches, c3, of the cap will be entered by the tube material, thus preventing retrograde rotation of the cap, and after the cap has a firm hold upon the shank, b, the rod, D, can be unscrewed from the shank.

"I have shown the size of the closing device as greatly exaggerated to more clearly illustrate the construction thereof, and obviously the head may be made round, oval, or otherwise to adapt it to different kinds of punctures.

"No cement is necessary with my device, nor is it necessary to singe or burn the edges of the hole or puncture in order to effect a tight closure, as is required with rubber plugs.

"In Fig. 7 I have shown washers, w and w1, interposed between the inner faces of the head and cap, the washers being used, if desired, to still further close the hole or puncture.

"By my invention the plug is securely and positively held at the interior and exterior of the tube, compressing the material thereof around the hole and pushing it into intimate contact with the shank and hub of the cap.

"My invention is not restricted to the spring-plate, a2, for the head and shank can be loosely hinged or pivoted together, if desired: and I am not restricted to the precise construction and arrangement shown, as the same may be modified and rearranged without departing from the spirit and scope of my invention."

Before considering the claims it will be convenient to review the prior art as disclosed in the record.

Patents to Hard (155,612) for an improvement in sleeve buttons and to Woodville (17,852) and Gowen (503,079) for plugging shot holes in vessels need not be considered. The arts are not analogous. Dreher (513,990) shows a device for closing holes and leaks in pneumatic tires in which a solid metal cone with a large base and a sharp point is forced in through the hole, distending it sufficiently to pass. A cap is then screwed down upon it. This leaves a sharp point inside the tire besides having a tendency to enlarge the hole. Long (564,251) shows a device for applying a patch to close a leak in a water pipe. The patch when applied forms a projection on the outside of the pipe which could not be tolerated in a tire. The same remark applies to Beith (570,368), which shows a patch on a water pipe, and to Phillips, which shows a patch on a boiler. Hurt & Hostetter patent (569,757) shows a device for closing punctures in pneumatic tires. A rubber cone is clamped unto the end of a screw-threaded rod or stem with which it is pushed into the puncture, a nut is screwed down on the outside and the projecting end of the stem cut off. This did not tend to increase the aperture, but it required the use of cement—was liable to leak where the stem went through the rubber cone and the cone itself tended to turn inside out and draw into the hole. Bell (585,078) shows a pneumatic tire device in which a head with a rigid central shank is shoved into the hole and a washer cap clamped down by means of a nut threaded on the shank. This device had three separate pieces, which were small and easily lost, and the insertion of the rigid head tended to enlarge the puncture. The device of Newell (605,330), having a rigid head, had a like tendency. O. E. Phillips (150,255) for patches on a hose pipe and C. J. Philips (571,096) for a boiler patch show the same projecting patch on the outside of the surface as in Long. Church (557,361) is for an anchor bolt for securing fixtures to walls, ceilings, etc., and Kraus (231,334) for a picture nail—remote arts which need not be considered. Mackay (31,143) for mending fire engine hose shows the objectionable protruding patch. An alleged prior use will be discussed subsequently.

The claims relied upon are:

"1. A puncture-closer for tubing, comprising a shank, a head hinged thereon, and a co-operating retaining-cap, substantially as described.

"2. A puncture-closer for tubing, comprising a threaded shank, a head hinged thereon and having a concave back, and a retaining-cap threaded to engage the shank, substantially as described."

"4. A puncture-closer for tubing, comprising a shank, a head hinged thereon, and a co-operating retaining-cap constructed and arranged to be engaged and held by the material of the tube, substantially as described.

"5. A puncture-closer for tubing, comprising a threaded shank to extend through the material of the tube, a thin, substantially concave-convex head hinged to the inner end of the shank, and a retaining-cap adapted to be screwed into the shank, to clamp the tube between the head and cap, substantially as described."

"10. A puncture-closer for tubing, comprising a metallic head, a threaded metal shank with which it is pivotally connected, whereby the head can be turned up against the shank, and a cap adapted to be screwed onto the shank and bear against the exterior of the tube, substantially as described."

There is certainly nothing in the prior art above reviewed which constitutes an anticipation or would sustain a finding that there was no invention disclosed in the Glidden device. The evidence shows that it is a useful device, a distinct improvement over former pneumatic tire puncture-closers.

FIG. 3.

Figure 3 of the Sampson patent, an enlarged side elevation, partly in section, quite clearly shows his device. Manifestly it is within the claims of the Glidden patent, but presents several modifications. Instead of using a separate rod, D, to screw the parts together, the threaded shank, b, is elongated and bent at right angles so as to give a purchase by which to turn it. When the cap, c, has been screwed down, the shank is filed off close to the cap so as to leave practically no protection. This seems to be a perfectly obvious improvement. The head, a, is also not round like Glidden's head, but oval and is fastened to the shank not with a pivot, but with a ball and socket joint. It can be inserted in the puncture so that its shorter diameter will distend the puncture less, and after insertion can be readily turned into any desired position. Since its contour is not identical with the contour of the round cap, c, the respective rims of the two parts are not at all points directly opposite each other, which tends to distribute pressure on the rubber of the tire, and apparently makes a more durable patch. The improvements are small; but, in view of the very large sales of the Glidden device with the Sampson modifications, we are not inclined to hold them to be devoid of patentability.

The Sampson claims are:

"1. A puncture-closer for tubing comprising a shank; a head; a universal joint for connecting said head to said shank; said head having a slot extending from said universal joint and of sufficient width to accommodate said shank; and a co-operating retaining-cap, substantially as described.

"2. A puncture-closer for tubing, consisting of the threaded shank, b, with its upper and offset to form a temporary handle and having a ball, e, formed upon its lower end; the head, a, formed with a socket to receive and loosely retain said ball, and the slot, j, narrower than the ball, e, and of sufficient width to accommodate the. shank, b; and the co-operating retaining-cap with serrated under surface substantially as described."

Defendant has undertaken to prove anticipation by himself. He claims that on June 25, 1897, while riding a bicycle near Derby, Conn.,

he plugged a hole in the bicycle tire with a collar button and tire tape, and that he shortly thereafter made two plugs very similar to his present plugs, one of which he put in a tire on a bicycle which he rode and afterwards sold with the plugged tire on it, and the other of which he kept; that on this one which he kept he applied for a patent in 1905. He produced it in evidence. The testimony as to these alleged transactions in 1897 is entirely founded on the unaided memories of witnesses testifying 10 years after the event, and is not sufficient under well-recognized rules to make out the alleged anticipation.

The device which defendant has manufactured and sold is shown in Figure 1 of his patent 818,-402.

FIG. 1.

The head, A, is pivoted so that it may be turned up against the shank for insertion as in Glidden. It is "substantially diamond shape" with rounded corners; i. e., oblong as in Sampson. The parts are screwed together by turning the shank, B, and, when this is done, the projecting end of the shank is cut off. It infringes both patents, but presents a new feature in the shape of a flexible washer formed of rubber, leather, or other soft material which is secured to the under side of the head, engages the inner surface of the tire, and tends to prevent wearing or cutting of the tire by the metal parts. The evidence seems to indicate that this is an improvement over the all-metal plugs. Whether in view of the washers shown in Fig. 7 of the Glidden patent such improvement will sustain the patent which was granted to Apstein is a question not before us here. So long as the device with the improvement infringes the patents now in suit, complainant is entitled to the usual relief.

The decree of the Circuit Court is affirmed, with costs.